UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH E.,

            Plaintiff,

     v.                                                            **DECISION AND ORDER**

                                        23-CV-6016S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

_____

      1.      Plaintiff Elizabeth E.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security Administration on August 7, 2014.  Plaintiff's alleged disability began on August 7, 2013, initially due to bilateral carpal tunnel syndrome; bilateral tarsal tunnel syndrome; lower back pain; asthma; tension headaches; mood disorder, not otherwise specified; major depressive disorder; unspecified obsessive-compulsive disorder; borderline personality disorder; unspecified cannabis use; and alcohol abuse dependence.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.  This includes recasting captions from earlier decisions involving this Plaintiff.

3.     On January 31, 2017, ALJ Michael Devlin held a hearing at which Plaintiff was represented by counsel and Vocational Expert Rachel Duchon appeared and testified.  (R.[2] at 17, 35-61.)  At the time of the hearing, Plaintiff was a 39-year-old woman with a high school education.  (R. at 500, 27.)  She had no past relevant work (R. at 500, 26) but around September 2019 Plaintiff began providing care to her terminally ill husband until his death in March 2020.  (R. at 488, 494, 1226.)

4.     The ALJ considered the case *de novo* and, on May 31, 2017, issued a written decision denying Plaintiff's application for benefits.  (R. at 17, 544.)  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed her first action challenging the Commissioner's decision.  This action resulted in a Decision and Order issued by Hon. Lawrence J. Vilardo on November 14, 2019, that remanded the case for "specific findings about the nature of [Plaintiff's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work."  Elizabeth [E.] v. Comm'r, No. 18-CV-6468, 2019 WL 6050300, at *6 (W.D.N.Y. Nov. 14, 2019) (R. at 601, 613-16). On January 10, 2020, the Appeals Council vacated the ALJ's 2017 decision and directed further administrative proceedings consistent with Judge Vilardo's Decision and Order. (R. at 618.)

5.     The ALJ conducted a second video hearing on April 26, 2022, where Plaintiff was again represented by counsel and vocational expert Sheri Pruitt appeared and testified.  (R. at 485, 508-40.)  On September 8, 2022, the ALJ issued a decision denying Plaintiff's claim for benefits.  (R. at 485.)

---

[2] Citations to the underlying administrative record are designated as "R."

6.      Following the ALJ's decision, Plaintiff filed the current action challenging the Commissioner's final decision.[3]  (Docket No. 1.)

7.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 12.)  Plaintiff filed her Response on July 21, 2023 (Docket No. 13), stating that no formal reply was needed, at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied, and Defendant's Motion will be granted.

8.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 1383(c)(3), 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

9.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen,

---

[3] The ALJ's September 8, 2022, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

10.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.   See 20 C.F.R. § 416.920.   The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

11.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to

perform [her] past work, the [Commissioner] then determines
whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

12.     Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

13.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 7, 2014.  (R. at 487.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:   bilateral carpal tunnel syndrome; bilateral tarsal tunnel syndrome; lower back pain; asthma; tension headaches; mood disorder, not otherwise specified; major depressive disorder; anxiety disorder, not otherwise specified; generalized anxiety disorder; unspecified obsessive-compulsive disorder; borderline personality disorder; unspecified cannabis use; and alcohol abuse/dependence.  (R. at 487.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 488-90.)

5

14.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds.  The ALJ also found that Plaintiff could stand and/or walk for up to six hours in an eight-hour workday; sit for up to six hours in a workday; occasionally push and/or pull 20 pounds; and frequently finger bilaterally.  The ALJ observed that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.  Furthermore, the ALJ found that Plaintiff could understand, remember, and carry out simple instructions and tasks; frequently interact with co-workers and supervisors; and maintain occasional contact with the public.  The ALJ also found that Plaintiff could work in a low stress work environment while being able consistently to maintain concentration and focus for up to two hours at a time.  (R. at 490.)

15.     At Step Four, the ALJ found that Plaintiff had no past relevant work.  (R. at 500.)  At Step Five, the ALJ posed hypotheticals to the Vocational Expert for claimant similar in age, education, work experience, skills, and RFC to Plaintiff and the Expert opined that this claimant could work as a marker, router, and small parts assembler.  (R. at 500.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 501.)

16.     Plaintiff now argues that the RFC is not supported by substantial evidence because the ALJ failed to reconcile the RFC findings with the opinions of consultative examiner Dr. Adam Brownfeld, Ph.D., and state agency consultant Dr. S. Bhutwala, Ph.D., who both found that Plaintiff had a marked limitation dealing with stress.  Plaintiff further argues that the ALJ has not followed the remand directive by not making specific findings as to her stress and her ability to work despite it.

17.     This Court disagrees and finds that the ALJ appropriately weighed the opinions of Drs. Brownfeld and Bhutwala in assessing Plaintiff's stress limitations. Furthermore, remand is unwarranted because the ALJ discussed how Plaintiff's asserted stressors affected her ability to work.

18.     When, as here, the ALJ adopts only a portion of a medical opinion, the ALJ "must explain why he rejected the remaining portions." Mancuso-Rosner v. Comm'r, No. 17-CV-1019-MJR, 2019 WL 666944, at *4 (W.D.N.Y. Feb. 19, 2019) (citation for quotation omitted).

19.     Judge Vilardo remanded this case for the ALJ to make specific findings about Plaintiff's stress (its nature and its triggers and how it affects her ability to work). Elizabeth [E.], supra, 2019 WL 6050300, at *6-7. (R. at 613-16.)   Given the highly individualized nature of stress and a claimant's ability to work despite it, Stadler v. Barnhart, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006); Elizabeth [E.], supra, 2019 WL 6050300, at *6 (R. at 613), the ALJ needs to make a specific finding on how stress affected that claimant's ability to work.

20.     On November 5, 2014, Dr. Brownfeld examined Plaintiff and found that she had marked limitation in appropriately dealing with stress and mild limitations in maintaining a regular schedule, learning new tasks, and performing complex tasks independently without requiring supervision.  (R. at 223.)

21.     Upon remand here, the ALJ accorded "significant weight to the opinion of Dr. Brownfeld" for its consistency with the evidence in the record but, nevertheless, rejected his conclusion of "mild abnormal findings." (R. at 496.)

22.     In making this determination, the ALJ relied on the findings of Plaintiff's treating sources who documented her normal to moderate abnormalities as well as Plaintiff's progress following her treatment.  Specifically, the ALJ relied on the medical records of Plaintiff's psychiatrist Dr. Prakash Reddy and counselor Cheryl Chiappone, LMHC, of Unity Health System (R. at 492) who treated Plaintiff from September 2013 through June 2015 and found that Plaintiff had what the ALJ termed "relatively moderate abnormal objective findings overall" in Plaintiff's mood, affect, insight, judgment, and her thought processes (R. at 206-08, 254, 260, 266, 302, 308, 321, 368, 396).

23.     Despite the above findings, the ALJ concluded that the medical records and evidence of further progress with treatment demonstrated that Plaintiff possessed "an ability to perform simple tasks with limited exposure to stress and interaction" despite her stress limitation.  (R. at 492-95.)  Upon these findings, the ALJ discounted so much of Dr. Brownfeld's opinion of marked limitation in dealing with stress and found that Plaintiff could perform simple tasks with limited exposure to stress.  (R. at 496.)

24.     Dr. Bhutwala also reviewed Plaintiff's mental health record and concluded that Plaintiff had marked limitation dealing with stress but not in all aspects of performing daily tasks.  Dr. Bhutwala found that Plaintiff was moderately limited in interacting appropriately with the public; responding appropriately to changes in the work setting; traveling to unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others.  (R. at 71, 72.)

25.     The ALJ has afforded some weight to Dr. Bhutwala's opinion because it did not support the level of limitations in Plaintiff's functioning identified by the physician. (R. at 496-97.)  The ALJ found that Plaintiff still could perform work despite Dr. Bhutwala's

finding that Plaintiff had low stress tolerance as indicated in Plaintiff's treatment notes from 2019, her care of her terminally ill husband, and her improvement after his death. (R. at 496, 1160-1557, 1560.)   Considering Plaintiff's existing stressors, her use of substances, sedation from Mirtazapine, and abnormal mental status exam findings, the ALJ concluded that Plaintiff's longitudinal record "is more compatible with a capacity for simple, low-stress work with occasional contact with coworkers and supervisors, and little to no contact" with the public.  (R. at 496.)

26.    Plaintiff now argues that the ALJ has not made individualized stress findings and disregarded these doctors' stress limitation findings.   She contends that the ALJ merely recycled his initial low stress limitation finding identical to the mental RFC without conducting the required analysis of the impact that Plaintiff's stress had on her ability to work.  (Docket No. 9, Pl. Memo. at 17-20, 21; R. at 490, 496.)  This Court disagrees.

27.    Upon review of the record, this Court concludes that the ALJ appropriately weighed the opinions of Drs. Brownfeld and Bhutwala through consideration of Plaintiff's treatment record and her attendance at counseling to support the finding that Plaintiff's dealing with stress were not as severe as opined by these consultants.

28.    As for the nature and triggers for her stress, Plaintiff testified that she was easily annoyed and stressed, and would have panic attacks and nausea when she was scared out of her "comfort zone."  (R. at 515-20.)  She feared being in strange places and distrusted people.  (R. at 516.)  She also became annoyed with what someone said or did something wrong.  (R. at 518-19.)  Plaintiff, however, did not cite any stress arising from her husband's terminal illness or her care of him and other family members.

29.     Plaintiff's treatment records also demonstrate the nature of her stress.  In fact, on September 25, 2013, Dr. Reddy noted that Plaintiff endured significant stressors in her life from her history of foster care and childhood sexual abuse (R. at 214).

30.     The ALJ noted Plaintiff's testimony and treatment records but found that, "while there is evidence of difficulty coping with stress and ongoing emotional dysregulation," Plaintiff's difficulty "is mostly confined to the period prior to 2019, and subsequent records reflect an impressive resiliency and capacity to cope with stress, with significant interaction with family and friends, and ongoing substance use, but good compliance with treatment otherwise and considerable progress and improvement."  (R. at 492, 498.)  The ALJ also supported this finding by noting Plaintiff's provision of care to her dying husband and her performance of household tasks despite the additional stress arising from her husband's terminal illness.  (R. at 494, 496.)  The ALJ then concluded that the record established that Plaintiff could perform simple, low-stress work with no more than occasional contact with coworkers and supervisors and little to no contact with the public.  (R. at 498.)

31.     This Court concludes that this testimony and medical record provides substantial evidence for the ALJ's finding regarding the nature and triggers of Plaintiff's stress.  Specifically, the ALJ properly found that Plaintiff's stress limitations did not affect her ability to work based on Plaintiff's compliance with treatment.  Plaintiff's ability to work despite her stress also was shown by her activities performed prior to her husband's terminal illness, her treatment that moderated her stress symptoms and her increased social activities outside of her home.

32.     Plaintiff's resilience in contending with additional stressors stemming from her husband's condition and passing in 2019 further showed her ability to perform work notwithstanding her stress limitations.

33.     From the combination of her continued treatment, social activities, and her endurance in 2019, this Court concludes that the ALJ properly concluded that stress would have little impact on Plaintiff's ability to work.  See, e.g., Watson v. Berryhill, 732 F. App'x 48, 52 (2d Cir. 2018); Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010); Abby H. v. Comm'r, No. 6:20-cv-6414-DB, 2021 WL 9595919, at *7 (W.D.N.Y. Sept. 7, 2021) (ALJ properly considered, among other activities, claimant's ability to socialize with family and friends outside the home, attend appointments, care for ill mother and husband, and clean the house, in assessing her RFC).  Here, the ALJ acknowledged Plaintiff's stress and its triggers but the absence of the impact of stress on her ability to work.  Furthermore, this Court finds that the ALJ addressed the elements of Plaintiff's stress limitation posed on remand in this case.  Thus, this Court holds that the ALJ appropriately found that Plaintiff could perform work despite her stress limitations.

34.     Accordingly, Plaintiff's Motion for Judgment on the Pleadings regarding her stress limitations is denied and Defendant's motion in opposition is granted.

35.     Plaintiff next contends that the ALJ did not reconcile the RFC finding that she could stand up to six hours during a workday allowing her to perform light exertion work with the findings of consultative examiner Dr. Harbinder Toor, M.D.  She also argues that the ALJ failed to recognize Dr. Toor's finding that Plaintiff's headaches could interfere with her routine.   This Court finds that remand is not warranted because the ALJ

appropriately considered Dr. Toor's finding regarding Plaintiff's ability to stand to perform light exertion work and her headaches.

36.     As a general matter, light work may include the ability to walk or stand for up to six hours in a workday.  SSR 83-10, 1983 WL 31251, at *6 (1983); see 20 C.F.R. § 416.967(b).  Although a moderate limitation in standing or walking may preclude light work, the ALJ "must demonstrate that a plaintiff can sit, stand, or walk for at least six hours per day with other substantial evidence," to perform light work notwithstanding those limitations.  Tamra S. v. Comm'r, No. 20-CV-01712, 2022 WL 54155696, at *4 (W.D.N.Y. Oct. 7, 2022) (citing cases).

37.     Here, Dr. Toor examined Plaintiff finding that Plaintiff had possible tarsal tunnel syndrome with burning-type of pain and lower back pain.  Dr. Toor also found that Plaintiff was in moderate pain, with difficult heel-to-toe walking and squats at 50% of full range.   The doctor also observed that Plaintiff had difficulty getting on and off the examination table although she was able to rise from a chair without difficulty and did not use an assistive device.  (R. at 226, 228.)  Dr. Toor found Plaintiff had full range of motion of her hips, knees, and ankles.  (R. at 228.)  Dr. Toor also found that her joints were stable and nontender without redness, heat, swelling, or effusion.  (R. at 228-29.)  The doctor concluded that Plaintiff had moderate limitation in standing, walking, bending, and lifting. (R. at 229, 605.)

38.     In arriving at Plaintiff's physical RFC, the ALJ afforded Dr. Toor's opinion significant weight for its consistency with the doctor's examination findings.   The ALJ, however, found that this opinion was to a lesser degree consistent with the remaining medical record which revealed treatment for Plaintiff's lower back pain.  (R. at 498.)  As

a result, the ALJ concluded that Plaintiff could perform light exertion work with six hours standing or walking during an eight-hour workday.  (R. at 490.)

39.     Plaintiff now advances two arguments regarding her physical assessment. First, she contends that the ALJ erred in giving significant weight to Dr. Toor's opinion and failing to explain how Plaintiff could stand and walk for six hours in a workday to perform light exertion work.  She contends that moderate limitations in walking and standing does not comport with the ability to perform light exertion work.

40.     This Court disagrees and finds that there is substantial evidence to support both the ALJ's conclusion that Plaintiff could stand or walk for up to six hours during a workday and his assessment of Dr. Toor's moderate limitation findings.

41.     This Court has previously held that moderate limitations in walking or standing are not inconsistent with performance of light work.  Harrington v. Colvin, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (collecting cases); Rayshown M. v. Comm'r, No. 6:20-CV-07001 EAW, 2022 WL 4298263, at *4 (W.D.N.Y. Sept. 19, 2022) (citing cases).  Therefore, Dr. Toor's moderate limitation findings did not preclude Plaintiff performing light work.

42.     Furthermore, Plaintiff's testimony and the medical record regarding her back and lower extremities provide substantial evidence that she could perform light work despite moderate limitations in walking and standing.

43.     Specifically, during the administrative hearing, Plaintiff testified that she only had occasional difficulties standing and walking due to numbing of her legs and following her right big toe surgery.  (R. at 524.)

44.     Her primary care physician, Dr. Paul Howe, examined Plaintiff in 2016 and 2017, and found that she had a normal gait and full strength in her lower extremities despite her complaints of thigh, foot, and back pain for which the doctor prescribed ibuprofen.  (R. at 437-39, 1613-14.)  Plaintiff's treatment record does not otherwise present evidence of any limitations in her standing or walking.

45.     This Court concludes that Dr. Howe's treatment notes and Plaintiff's testimony provide further substantial evidence supporting the ALJ's assessment of Dr. Toor's moderate limitation findings.  The extent of this treatment and Plaintiff's own testimony supports the finding that Plaintiff could stand or walk for up to six hours during a workday notwithstanding the moderate limitations found by Dr. Toor.

46.     Therefore, Plaintiff's Motion for Judgment on the Pleadings on her ability to walk or stand for up to six hours is denied and Defendant's Motion for Judgment on the Pleadings on this point is granted.

47.     Plaintiff also argues that the ALJ disregarded her complaints of having tension headaches four times a week with some lasting a full day.  (R. at 226, 229.)  She argues that the ALJ failed to acknowledge Dr. Toor's observation that these headaches could interfere with her routine and, as a result, failed to reconcile her headaches in the RFC.  (R. at 229.)

48.     Under pertinent regulations for Plaintiff's Title XVI application submitted before March 27, 2017, a medical opinion reflects "judgments about the nature and severity of [Plaintiff's] impairment(s) including . . . what [Plaintiff] still could do despite impairment(s), and [Plaintiff's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).

49.    While noting Dr. Toor's opinion that Plaintiff's headaches could interfere with Plaintiff's routine, the ALJ found that the opinion was consistent "to a lesser degree" with the medical record which includes treatment of Plaintiff's headaches.  (R. at 498.) Relying in part on Plaintiff's testimony, the ALJ also found that Plaintiff's claimed headaches were treated by medication.  (R. at 491, 497, 498, 525.)

50.    This Court concludes that Plaintiff has not established any limitations arising from her suffering from headaches.  While Plaintiff described her headaches and their severity, she has not connected that ailment to her ability to perform light work.   In addition, this Court finds that the ALJ correctly weighed Dr. Toor's opinion and found no work limitations arising from Plaintiff's headaches.

51.    Dr. Toor did not render a medical opinion about Plaintiff's headaches as defined by the regulations.  While Plaintiff reported to Dr. Toor the duration and frequency of her headaches (R. at 226), Dr. Toor merely found that these headaches could interfere with her routine (R. at 229) without identifying any limitations arising from these tension headaches or stating how Plaintiff's headaches could interfere with her daily routine. Dr. Toor's conclusion that Plaintiff's headaches "can interfere" with her routine is too indefinite to constitute a medical opinion.

52.    Plaintiff's medical record merely shows the possibility of impairment from her headaches but there is no evidence or instances of actual impairment arising therefrom.  Plaintiff only sought treatment for her headaches on one or two occasions (R. at 1622) while taking medication.  Plaintiff testified that she took Fioricet for her tension headaches and admitted that the medication helped her headaches despite its side

effects.   (R. at 525, 491.)   However, Plaintiff did not identify any side effects she experienced or how they hindered her ability to work.

53.   Without evidence on how Plaintiff's headaches or her prescribed treatment interfered with her ability to work, this Court therefore finds that Plaintiff failed to show any limitation arising from her tension headaches.

54.   Plaintiff's Motion for Judgment on the Pleadings regarding her limitations arising from her headaches is also denied and Defendant's motion in opposition is granted.

55.   Accordingly, having reviewed the ALJ's decision and considering Plaintiff's arguments, this Court finds that the ALJ appropriately weighed the stress limitation assessments of Drs. Brownfeld and Bhutwala.   Furthermore, the ALJ properly assessed the opinion of Dr. Toor of Plaintiff's moderate limitation in standing and walking and correctly concluded that Plaintiff could perform light work notwithstanding her impairments in her back and lower extremities and her tension headaches.   Plaintiff's Motion for Judgment on the Pleadings therefore is denied and Defendant's Motion for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       April 10, 2024
             Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                     United States District Judge